NO.   94-069

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ROBERT L. POTTER, DEBRA LEE
STEINER and JASON W. RIGGS,

      Petitioners,

    -v-

DISTRICT COURT OF THE SIXTEENTH
JUDICIAL DISTRICT OF THE STATE
OF MONTANA,  IN AND FOR THE
COUNTY OF CUSTER, and THE HONORABLE
JOE L. HEGEL, Presiding Judge,

      Respondents.

FILED

SEP 1 2 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

      For Petitioners:

            R.L. Stephens, Jr., Billings, Montana: R. Allen
            Beck, Billings, Montana; James Graves, Oliver,
            Graves & Toennis, Billings, Montana

      For Respondents:

            Hon. Joseph P. Mazurek, Attorney General; Micheal
            Wellenstein, Assistant Attorney General; Gary Bunke,
            Deputy Custer County Attorney

                    Submitted:   August 9, 1994

                    Decided:   September 12, 1994

Filed:

_____
      Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an original proceeding which arises out of the issuance of two search warrants on August 18, 1993. The search warrants were signed by Steven Rice, as "Acting Justice of the Peace." The execution of the warrants led to the seizure of marijuana and other drug related items. Defendant Robert Potter was charged with one count of criminal sale of dangerous drugs, a felony pursuant to § 45-9-101(1), MCA, and one count of criminal possession with intent to sell, a felony, pursuant to § 45-g-103, MCA. Defendant Debra Steiner was charged with criminal possession with intent to sell, a felony pursuant to § 45-g-103, MCA. Defendant Jason Riggs was charged with one count of criminal possession with intent to sell, by accountability, a felony pursuant to §§ 45-g-103, 45-2-301, and 45-2-302, MCA.

The defendants attack the validity of the search warrants alleging that they were not issued by an independent magistrate, thereby rendering the search warrants invalid. Specifically, the defendants argue that the acting justice of the peace was not properly qualified to serve as a substitute justice of the peace under the appropriate statutes and under the Rules for Certification of Judges of Courts of Limited Jurisdiction (hereinafter Commission Rules) adopted by this Court on October 24, 1990 and found at Title 3, Ch. 1, part 15, MCA, Annotations (1992), at 48-51. Therefore, according to the defendants, Mr. Rice had no jurisdiction to issue the search warrants. We agree.

We conclude that, for the reasons hereafter set forth, this is

an appropriate matter over which this Court should exercise its power of supervisory control and, accordingly, we accept jurisdiction of this case. We hold that Steven Rice was without authority or jurisdiction to issue the search warrants, that the search warrants were void ab initio, and that, as a result, the District Court must vacate its order denying defendants' motion to suppress and enter an order consistent with this opinion suppressing the evidence seized pursuant to the warrants.

## BACKGROUND

At all times pertinent to this case, Donald Scho'ct was the duly elected, qualified and acting Justice of the Peace for Custer County and the only justice of the peace in that county. On August 11, 1993, Judge Schott's office notified Mr. Rice that it might call on him to serve as substitute Justice of the Peace during August 16 through August 20, 1993, as Judge Schott would be on vacation during that time.

Mr. Rice was and is the pastor of the Lutheran Church in Miles City. He previously was the elected Justice of the Peace for Powder River County and was the City Judge for Broadus. Mr. Rice held these positions for approximately three years, leaving the bench in March of 1987. During his tenure on the bench in Powder River County, Mr. Rice passed the certification test required by the Commission on Courts of Limited Jurisdiction (Commission). He also regularly attended the training sessions sponsored by the Commission. Since 1987, and prior to August 18, 1993, when Mr. Rice signed the search warrants, the Commission approved Mr. Rice

3

to act as substitute judge for two Miles city city judges. Subsequent to the incident at issue here, Mr. Rice has been approved to act as a substitute justice of the peace in Powder River County and Custer County.

On August 18, 1993, Custer County Undersheriff, Don Neese presented two applications for search warrants to Mr. Rice. Although City Judge Paul Mottram was available, Undersheriff Neese presumed, in good faith, that Mr. Rice was an authorized substitute justice of the peace. Mr. Rice, believing himself to be the acting substitute Custer County Justice of the Peace, granted the applications and signed the search warrants. As stated above, the execution of the warrants resulted in the seizure of marijuana and other drug related items, and the subsequent felony drug charges filed against the defendants.

On October 12, 1993, defendant Potter filed a Motion to Suppress Evidence. The motion challenged the validity of the search warrant on several grounds including the allegation that Mr. Rice was not qualified as an independent magistrate to issue the search warrant.

The defendants subsequently filed a consolidated motion to suppress on December 7, 1993, challenging the search warrants on the same grounds. The District Court held a hearing on the motion on December 15, 1993, and issued its written order on December 16, 1993. The court denied the motion relying on § 46-5-103(1)(c), MCA, which provides in pertinent part:

> A search and seizure, whether with or without a warrant, may not be held to be illegal if:

(c) any irregularity in the proceedings has no effect on the substantial rights of the accused.

The District Court, finding that Mr. Rice was "qualified" in terms of competence and experience, and that any mistakes were "innocent errors of omission and not directed by any purpose to evade the legal requirements," concluded that "although the procedure used to call in Steven Rice as substitute justice of the peace was technically flawed, the substantial rights of the Defendants were not affected..."

The defendants filed an application for Writ of Supervisory Control or Other Appropriate Writ on June 1, 1994, stating that the District Court had found the issue raised at the suppression hearing could be dispositive of the case, and that the defendants should take the issue to this Court. The defendants allege that the specific issue to be determined by this Court is:

> Is the failure to have a properly appointed, independent Magistrate signing search warrants a "mere technicality" or does this constitute a violation of the substantial constitutional rights of the defendants?

DISCUSSION

I. SUPERVISORY CONTROL

The exercise of supervisory control by this Court is authorized by Article VII, Section 2(2) of the Montana Constitution and by Rule 17(a), M.R.App.P. We are reluctant to exercise supervisory control as it is an extraordinary remedy. State ex rel. O'Sullivan v. District Court (1946), 119 Mont. 429, 431-32, 175 P.2d 763, 764. Notwithstanding, supervisory control is appropriate where the district court is proceeding under a mistake

5

of law, and in so doing is causing a gross injustice, State ex rel. Forsyth v. District Court (1985), 216 Mont. 480, 484, 701 P.2d 1346, 1348; State ex rel. Fitzgerald v. District Court (1985), 217 Mont. 106, 114, 703 P.2d 148, 153-54, and where, as here, requiring a defendant to stand trial would result in unnecessary expenditures of time and resources. State ex rel. Torres (1994), 51 St. Rep. 599, 600: State ex rel. Fletcher v. District Court (1993), 260 Mont. 410, 414, 859 P.2d 992, 994; State ex rel. First Bank System v. District Court (1989), 240 Mont. 77, 84, 782 P.2d 1260, 1264.

Here, the State concedes that if the search warrants at issue are invalid and if the evidence resulting from the execution of those warrants is suppressed, then it will have no case against the defendants. No argument has been advanced that the evidence could have been seized under any exception to the written warrant requirement. Under such circumstances, because we conclude that the search warrants are void ab initio, it would be fundamentally unfair and prejudicial, not to mention a waste of time and the limited resources of the court and counsel, to require this case to proceed further. Accordingly, it is appropriate that we assume jurisdiction of this case and exercise original jurisdiction under a writ of supervisory control in order to forestall further needless and expensive litigation.

II. WHO MAY ACT AS SUBSTITUTE JUSTICE OF THE PEACE

At the outset, we stress that nothing in this opinion is meant to reflect adversely on the training, experience, professional competence or integrity of either Mr. Rice or Judge Schott. The

critical legal question which we address is simply whether, at the time he issued the search warrants, was Mr. Rice, under the law, a duly appointed and qualified substitute justice of the peace? We must answer that question in the negative, and in doing so, begin our analysis with the Constitution of the State of Montana.

The judicial power of the state derives from Article VII of Montana's 1972 Constitution.  Section 5 of Article VII provides, in pertinent part:

> Justices of the peace. (1) There shall be elected in each county at least one justice of the peace with qualifications, training, and monthly compensation provided by law. . . .
>
> (3) The legislature may provide for additional justices of the peace in each county.

That Article and Section of our State Constitution make it clear that the legislature is to establish, by law, the qualifications and training of justices of the peace and, in its discretion, provide for additional justices of the peace in each county. See, generally, Title 3, Ch. 10, MCA.  This Court may make rules governing the practice and procedure in all courts of this state. Art. VII, Sec. 2(3), Mont. Const.

It follows that Article VII, Section 5 of the Constitution also empowers the legislature to establish, by law, the qualifications of and procedures for appointing substitute justices of the peace in the various counties.  The statute authorizing the appointment of substitute justices of the peace is found at § 3-10-231, MCA. That statute provides:

> (1) Whenever a justice of the peace is disqualified from acting in any action because of the application of the

supreme court's rules on disqualification and substitution of judges, subdivision 1, 2, or 3, he shall either transfer the action to another justice's court in the same county or call in a justice from a neighboring county to preside in his behalf.

(2) Within 30 days of taking office, a justice of the peace shall provide a list of persons who are qualified to hold court in his place during a temporary absence when no other justice or city judge is available. The persons listed must be of good moral character and have community support, a sense of community standards, and a basic knowledge of court procedure. The county commissioners shall administer the oath of office to each person on this list as soon as possible after the person has received a waiver of training from the supreme court.

(3) Whenever a justice is sick, disabled, or absent, the justice may call in another justice, if there is one readily available, or a city judge or a person from the list provided for in subsection (2) to hold court for the absent judge until his return. If the justice is unable to call in a substitute, the county commissioners shall call in another justice, a city judge, or a person from the list provided for in subsection (2).

(4) During the time when a justice of the peace is on vacation or attending a training session, another justice of the peace of the same county shall be authorized to handle matters that otherwise would be handled by the absent justice. When there is no other justice of the peace in the county, the justice of the peace may designate another person in the same manner as if the justice were sick or absent.

(5) A justice of the peace of any county may hold the court of any other justice of the peace at his request.

In terms of training, the legislature has mandated that all judges serving on courts of limited jurisdiction (justice, city and municipal courts, § 3-1-1501, MCA) attend annual training sessions supervised by the Commission. Section 3-10-203, MCA; Rule 4, Commission Rules.

However, § 3-10-231(2), MCA, and Rule 5C, of the Commission Rules provide that substitute judges may receive a waiver of training from the Commission enabling them to act as substitute justices on an occasional basis pursuant to § 3-10-231(2) through

8

(5), MCA. Rule 5C of the Commission Rules requires the sitting justice of the peace to submit a request for a waiver of training to the Commission and show that the substitute judge, as mandated by § 3-10-231(2), MCA, is of good moral character, has good community support, a sense of community standards, and a basic knowledge of court procedure. After reviewing the request, the Commission advises the sitting judge of its decision. Rule 5C(3), Commission Rules.

Therefore, according to the applicable statutes and Commission Rules, before a person is legally qualified to serve as a substitute justice of the peace, the following requirements must be followed: (1) within 30 days of taking office the elected or appointed justice of the peace must create a list of persons who are qualified to act in the sitting justice's absence when no other justice or city court judge is available, § 3-10-231(2), MCA; (2) the sitting justice of the peace must request and obtain from the Commission a waiver of training for the substitute judge, § 3-10-231(2), MCA, and Commission Rule 5C; and (3) the substitute judge must be sworn in by the county commissioners, § 3-10-231(2), MCA.

Additionally, the defendants maintain that, before calling in a substitute judge from the list, there must be no other justice of the peace, or city judge available to act as a substitute judge. We agree with that conclusion. Reading § 3-10-231(3) and (4), MCA, in pari materia, with § 3-10-231(2), MCA, as we must (§ 1-2-101, MCA), it is clear that a sitting judge may call in a substitute judge from the list "... when no other justice or city judge is

9

available." Section 3-10-231(2), MCA. Accordingly, we conclude that, under the statutory scheme enacted by the legislature, in addition to the three requirements set forth in the immediately preceding paragraph of this opinion, a sitting justice of the peace must first attempt to call in another justice of the peace, if there is one readily available, (§ 3-10-231(2), MCA), or a city judge before resorting to calling in a qualified substitute judge from the list. Sections 3-10-231(2), (3) and (4), MCA.

In the instant case, there is no question that the above statutory scheme 'was violated. In fact, the District Court found that "the procedure used to utilize Steven Rice was flawed in almost every respect." Moreover, the District Court also concluded that the language of § 3-10-231(2), MCA, and Rule 5C of the Commission Rules mandated that a person first obtain a waiver of training from the Commission before he or she is authorized to act as substitute judge. While Judge Schott testified at the suppression hearing that he believed Mr. Rice was qualified to serve as acting justice of the peace for Custer County, it is, nevertheless, undisputed that the sitting justice did not follow the procedures set forth above before Mr. Rice was called in as a substitute judge.

Judge Schott did not draw up a list of persons qualified to hold court in his temporary absence within 30 days of taking office, nor did he request and obtain a waiver of training from the Commission for Mr. Rice as required by § 3-10-231(2), MCA, and Commission Rule 5C. The evidence at the suppression hearing showed

10

that Judge Schott had a copy of a "Request for Waiver of Training" dated May 6, 1991, in his files which asked the Commission to waive the training requirements for Mr. Rice from "now until December 31, 1994." However, Judge Schott did not have any evidence that he actually mailed the request to the Commission. Moreover, according to the testimony of Harlan P. Goan, Assistant Supreme Court Administrator, the Commission did not have any evidence that the request was received or approved prior to the issuance of the search warrants. Therefore, it is clear from the record that the Commission had not approved Mr. Rice to serve as substitute justice of the peace for Custer County on August 18, 1993, the date he signed the search warrants.

Furthermore, Mr. Rice was not sworn by the county commissioners as required by § 3-10-231(2), MCA, and, although city judge Mottram was available to serve as a substitute, he was not asked to do so as mandated by § 3-10-231(2), (3) and (4), MCA.

While finding that "the procedure used to utilize Steven Rice was flawed in almost every respect," the District Court, relying on § 46-5-103(1)(c), MCA, denied the defendants' motion to suppress concluding that the technical errors did not affect the substantial rights of the defendants. We disagree with the court's legal conclusion in that respect.

We conclude that the basic inquiry in this case should not be whether the substantial rights of the defendants were affected as a result of a "technical error," but whether Mr. Rice had authority or jurisdiction in the first instance to issue the search warrants

11

at all. It is axiomatic that, if Mr. Rice had no authority to issue the search warrants, the warrants were void _ab initio,_ and that evidence seized from the defendants in the absence of a valid search warrant or a recognized exception from the warrant requirement, did violate their substantial rights to be free from unreasonable searches and seizures under Article II, Section 11 of Montana's Constitution.

This Court has defined judicial power as "the authority not only to decide, but to make binding orders or judgments." State ex rel. Bennett v. Bonner (1950), 123 Mont. 414, 425, 214 P.2d 747, 753. In Montana the power or authority to issue search warrants is reposed exclusively in city or municipal court judges and justices of the peace within the judge's geographical jurisdiction, and in district court judges within this State. Sections 46-5-220(2)(a) and (b), MCA. Montana law grants to no other person the authority or power to issue search warrants. The term "judge" (which includes municipal and city court judges and justices of the peace, § 3-1-1501(2), MCA), means a person who is "vested by law" with the power to perform judicial functions, § 46-1-202(10), MCA (1991).

The legislature, pursuant to the power granted it by Article VII, Section 5 of Montana's Constitution, has enacted a statutory scheme by which persons might lawfully exercise the powers and authority of a judge as a substitute for a duly elected or appointed sitting justice of the peace. Section 3-10-231, MCA. This Court, pursuant to Article VII, Section 2(3), of the Constitution of Montana and § 3-10-231(2), MCA, has adopted the

**12**

Commission Rules which implement, in certain respects, that legislative scheme.

Unless the procedures required by those statutes and the Commission Rules are followed, then no substitute justice is appointed, and the person seeking to exercise the powers of a judge as his substitute has no authority or jurisdiction to do so. That person is, quite simply, not a judge as he has not been vested by law with the power to perform the functions of a judge. Since he was not a lawfully appointed and sworn substitute judge, Mr. Rice had no more authority to issue a search warrant than did any other member of the general public. Regardless that Mr. Rice was qualified by training and experience _to be_ a judge, he _was not_, in fact, a judge at the time he issued the search warrants, because the statutory procedures _to make_ him a judge and _to vest_ him with the power to perform judicial functions had not been followed.

Since the search warrants at issue here were not issued by a judge, they were void _ab initio_, of no force or effect, and provided no authority under which the authorities could search the defendants' property and seize evidence.

The defendants argue that our holding in State v. Tropf (1975), 166 Mont. 79, 530 P.2d 1158, is persuasive authority. We agree that our decision in that case supports our opinion here. In _Tropf_, the county attorney's office prepared a complaint and affidavit for a search warrant which contained a district court heading and signature line. On the day of the search in question, there were no district judges present in the courthouse, so the

13

police detective submitted the complaint and affidavit to the Great Falls city police judge. The police judge signed the search warrant with the district court heading and signature line. Tropf, 530 P.2d at 1159. This Court upheld the district court's suppression of the evidence obtained under the search warrant, concluding that police courts are courts of limited jurisdiction and have only such authority as is expressly conferred upon them. Tropf, 530 P.2d at 1160. Under the statutory scheme in place at the time we decided Troaf, police judges did not have authority to issue search warrants, were not "judges" for purposes of issuing search warrants and therefore, the search warrant issued by the city police judge was void. Tropf, 530 P.2d at 1161.

Similarly, in the instant case, we hold that the search warrants issued by Mr. Rice on August 18, 1993, were not issued by a judge, that those search warrants were void ab initio and that any evidence seized pursuant to those warrants must be suppressed. Accordingly, we remand this case to the Sixteenth Judicial District Court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

_____
Justice

We Concur:


_____
Chief Justice

John Conway Harrison

_____

_____

_____

William E. Hunter
Justices

Chief Justice J. A. **Turnage,** specially **concurring:**

I concur in the majority opinion. While the statutory procedure set forth in § 3-10-231, MCA, was not even minimally followed in this case, I also suggest that portions of the statute make it difficult for a substitute judge to qualify and for local law enforcement and the public to determine whether a substitute judge is properly qualified to perform judicial functions.

Section **3-10-231(2),** MCA, provides that **"[t]he** county commissioners shall administer the oath of office to each person on [the substitute judge] **list."** In addition to being unwieldy, it is not likely that all three county commissioners are going to administer the oath of office to the substitute judges on the list: **yet,** that is what the statute seemingly requires. Moreover, that requirement is in conflict with § 7-5-2121, MCA, which provides **that any** member of the board of county commissioners may administer oaths. Additionally, § 2-16-211, MCA, provides that the oath of judicial officers may be taken before any officer authorized to administer oaths. **See,** § 1-6-101, MCA. Accordingly, the statute should be amended to simply require that the oath of office for substitute judges be taken before any member of the board of county commissioners or before any officer authorized to administer oaths.

Finally, there is nothing in the statutory scheme enacted by the legislature that requires any **"paper trail"** at the local level when the sitting judge calls in a substitute. That necessitates, as here, the local law enforcement authorities and perhaps court

16

personnel or other interested persons either presuming that the person who is called in is a qualified substitute judge, or, alternatively, having to seek verification from the Office of the Court Administrator of the Supreme Court in Helena. Neither approach is satisfactory, especially when a search warrant is being sought over a weekend, on a holiday, after business hours or under exigent circumstances.

Section 3-10-231, MCA, should be amended to require that the substitute judges subscribe a <u>written</u> oath of office in conformity with the provisions of Article III, Section 3, of the Montana Constitution and § 2-16-211, MCA, and that the written oath be then filed in the office of the county clerk in accordance with § 3-10-202, MCA, along with the sitting judge's list of qualified substitute judges and the Commission's written approval and waiver of training for those substitutes. I also submit that the statute be amended to require updated and current copies of the list of qualified and sworn substitute judges be provided from time to time to local law enforcement by the county clerk.

Given the extreme consequences of an unqualified substitute judge attempting to act in a judicial capacity, as our opinion here clearly indicates, I urge the next session of the legislature to give serious consideration to the above proposed statutory amendments. The next unlawful search warrant might be issued for the crucial evidence in a homicide case.

_____
Chief Justice

Justice James C. Nelson, author of the majority opinion, also joins in the special concurring opinion.

_____
Justice

September 12, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

R. L. Stephens, P.C.
316 No. 25th St.
P.O. Box 1438
Billings, MT 59103-1438

R. Allen Beck, P.C.
724 Grand Ave.
Billings, MT 59101

James Graves, Esq.
Oliver, Graves & Toennis, P.C.
P.O. Box 7227
Billings, MT 59103-7227

David L. Irving
Attorney at Law
110 Fifth St. So.
Glasgow, MT 59230

Hon. Joseph P. Mazurek, Attorney General
Micheal Wellenstein, Assistant
Justice Bldg.
Helena, MT 59620

Gary Bunke
Custer County Attorney
1010 Main St.
Miles City, MT 59301

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

**BY:** _____

**Deputy**