No. 97-502

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 201

STATE OF MONTANA,

Plaintiff and Appellant,

v.

BYRON DEAN VICKERS and

PATRICIA ELAINE VICKERS,

Defendants and Respondents.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Dawson,

The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph P. Mazurek, Attorney General, C. Mark Fowler, Assistant Attorney General, Helena, Montana; Gerald Navratil, Dawson County Attorney, Scott W. Herring, Deputy Dawson County Attorney, Glendive, Montana

For Respondent:

Lorraine A. Schneider, Simonton, Howe, Schneider, Glendive, Montana

Submitted on Briefs: April 16, 1998

Decided: August 20, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶ On October 29, 1996, Byron Dean Vickers and Patricia Elaine Vickers (collectively the Vickers) were each charged by information in the Seventh Judicial District Court, Dawson County, with felony theft and several counts of felony and misdemeanor drug-related offenses. By order of the District Court, the two actions were joined. On January 15, 1997, the Vickers filed a motion to suppress evidence seized pursuant to two search warrants issued on October 12 and 14, 1996, claiming that the substitute justice of the peace who issued the warrants, Mitzi Barney, was not duly authorized to act as substitute justice of the peace. On June 11, 1997, the District Court issued its memorandum and order granting the Vickers' motion to suppress. The State of Montana (the State) appealed. We affirm the order of the District Court.

¶ The sole issue on appeal is whether Mitzi Barney was duly authorized to act as substitute justice of the peace pursuant to §§ 3-10-202(1) and -231, MCA (1995), when she issued the October 12 and 14, 1996 search warrants.

BACKGROUND

¶ Robert A. Larsen (Judge Larsen) was the duly elected justice of the peace for Dawson County at all times pertinent to this action. Judge Larsen's current term of office began in January 1995. Within thirty days after the commencement of his new term, Judge Larsen selected three persons, including Mitzi Barney (Barney), to serve as substitute justices of the peace in his absence. Although Judge Larsen did not memorialize his selections on a separate list as required by § 3-10-231(2), MCA, he submitted to the Commission on Courts of Limited Jurisdiction (Commission) written requests for waivers of training for the proposed substitutes in accordance with § 3-10-231(2), MCA, and Rule 5C, Commission Rules. The Commission approved the waiver of training for Barney on July 18, 1995. On March 7, 1995, a written oath of office was administered to Barney pursuant to § 3-10-202(1) and -231 (2), MCA. However, the oath administered to Barney did not exactly conform to the oath of office prescribed for judicial officers in Article III, Section 3 of the Montana Constitution, and § 3-10-202(1), MCA. The oath administered to Barney contained the same pledge to protect and defend the Constitutions of the United States and Montana, but omitted the pledge to "discharge the duties of my office with fidelity," and replaced it with the pledge to "serve in the capacity of substitute Justice of the Peace or City Judge to the best of my abilities."

¶ On October 12, 1996, Judge Larsen notified the Glendive Police Department dispatcher that he would be out of town October 12-14, 1996, and that either Wibaux County Justice of the Peace Bill Franks (Judge Franks), Prairie County Justice of the Peace Fran Fleckenstein (Judge Fleckenstein), or Mitzi Barney, could act as substitute justice of the peace in his absence. Judge Larsen did not call Judge Franks, Judge Fleckenstein, or Barney directly to request that they be substitute justices in his absence.

¶ That same day, October 12, 1996, Dawson County Sheriff's Deputy Wally Peter (Deputy Peter) applied for a warrant to search the Vickers' house for drug-related evidence and contraband. Deputy Peter first tried to contact Judge Franks without success. Deputy Peter then contacted Judge Fleckenstein. Judge Fleckenstein told Deputy Peter she had little experience with search warrant applications, and suggested that he call another justice of the peace with more experience in the area of search warrants. Deputy Peter then contacted Barney, who agreed to come to the courthouse to act as substitute justice of the peace. Barney reviewed Deputy Peter's application and, finding probable cause to search, issued the search warrant.

¶ Two days later, on October 14, 1996, Deputy Peter applied for a second warrant to search the Vickers' vehicles. For approval of the second warrant, Deputy Peter directly contacted Barney, without first trying to contact Judge Franks or Judge Fleckenstein. Barney reviewed the application and issued the second search warrant.

¶ Execution of the two search warrants led to the seizure of five pounds of marijuana and methamphetamine, other drug-related contraband, and stolen property. The Vickers were each charged with several felony and misdemeanor drug offenses and felony theft. The Vickers filed a motion to suppress the evidence obtained during the two searches on the ground that Barney was not a duly authorized justice of the peace when she issued the search warrants.

¶ The court granted the Vickers' motion based on two procedural errors in securing the validity of the search warrants. First, the court found several procedural flaws in securing Barney's authority to act as substitute justice of the peace pursuant to §§ 3-10-202(1) and -231, MCA, and Potter v. Dist. Ct. of 16th Jud. Dist. (1994), 266 Mont. 384, 391, 880 P.2d 1319, 1324. Second, the court found that Judge Larsen failed to use the proper method of calling in a substitute justice of the peace as prescribed by § 3-10-231, MCA, and Potter, 266 Mont. at 391, 880 P.2d at 1324. The court concluded that these procedural errors rendered the search warrants issued by Barney void *ab initio*. In reaching this conclusion, the court relied heavily on Potter. The court stated:

> Action by substitute justices is strictly controlled . . . . The plain meaning interpretation of the statutes involved here is mandated, not merely directory . . . . The failure to have search warrants issued by a properly appointed, independent magistrate renders them void. While in the instant case, there was substantial compliance with the qualified requirements, it appears clear from the holding in Potter, supra, that only properly qualified persons may act as judges . . . . [T]he teachings of Potter are clear: unless the statutory procedures and Commission Rules imparting judicial authority are faithfully honored, no such authority exists . . . . Judicial authority should not [sic] and is not easily given; "close enough" is an inappropriate and unacceptable standard. The authorization statute provides legitimacy to the court and justices, and serves to protect citizens' rights. To meet these goals, the statute must be followed. (Citations omitted.)

DISCUSSION

¶ Was Mitzi Barney duly authorized to act as substitute justice of the peace pursuant to §§ 3-10-202(1) and -231, MCA (1995), when she issued the October 12 and 14, 1996 search warrants?

¶ **This Court reviews a district court's findings of fact regarding suppression hearing evidence to determine whether they are clearly erroneous. State v. Hermes (1995), 273 Mont. 446, 449, 904 P.2d 587, 588-89. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that the District Court made a mistake. Hermes, 273 Mont. at 449, 904 P.2d at 589. We review a district court's conclusions of law *de novo* to ensure that the court's interpretation of the law was correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.**

¶ **We note at the outset that the Montana Legislature enacted significant amendments to § 3-10-231, MCA, effective March 25, 1997. *See* 1997 Mont. Laws, Ch. 150. These amendments were enacted in response to Potter, where we raised concerns regarding the efficacy of the statutory qualification procedures for substitute justices of the peace. 1997 Mont. Laws, Ch. 150; Potter, 266 Mont. at 394-95, 880 P.2d at 1326-27 (Turnage, C.J., concurring). The amendments to § 3-10-231, MCA, went into effect after the events giving rise to this action occurred, but before the District Court issued its ruling. We have held that the canon of statutory construction which states that courts should apply the law in effect at the time it renders its decision applies only to the application of judicial decisions, not to the application of statutes, ordinances, or regulations. Porter v. Galarneau (1996), 275 Mont. 174, 184-85, 911 P.2d 1143, 1149-50 (holding that pursuant to § 1-2-109, MCA, a statute is not retroactive unless expressly so declared). Because no clause appears in the 1997 amendments to § 3-10-231, MCA, making them retroactive, we must apply the pre-1997 version of § 3-10-231, MCA, to this case.**

¶ **Montana law provides specific procedures for authorizing persons to act as a substitute justice of the peace. As of October, 1996, Montana law provided that before a person is legally qualified to serve as a substitute justice of the peace, the**

**following criteria must be met:**

> 1. Within 30 days of taking office, the elected justice of the peace must provide a list of persons qualified to act in the sitting justice's absence when no other justice or city judge is available;
>
> 2. The persons listed must be of good moral character, and have community support, a sense of community standards, and a basic knowledge of court procedure;
>
> 3. The persons listed must receive a waiver of judicial training from the commission on courts of limited jurisdiction established by the Supreme Court; and
>
> 4. The persons listed must subscribe to the constitutional oath of office and file the oath with the county clerk.

Sections 3-10-231(2) and -202(1), MCA; Rule 5C, Commission Rules; Potter, 266 Mont. at 391, 880 P.2d at 1324.

¶ **Montana law also provides a particular procedure for calling in replacement justices. In Potter, we interpreted § 3-10-231(2), (3), and (4), MCA, to mean that a sitting justice of the peace must first attempt to call in another duly elected justice of the peace, if there is one readily available, or a city judge before calling in a substitute judge from the list provided for in § 3-10-231, MCA. Potter, 266 Mont. at 391, 880 P.2d at 1324. Additionally, the law explicitly requires that the sitting justice of the peace make the call for a replacement. Section 3-10-231(3) and (4), MCA. If the sitting justice of the peace is unable to make the call for a replacement, then the county commissioners are authorized to make the call. Section 3-10-231(3) and (4), MCA.**

¶ **The parties do not dispute that the second and third criteria of the authorization procedure for qualifying Barney to act as substitute justice of the peace were satisfied. The parties only dispute whether the first and fourth criteria of the authorization procedure were satisfied and whether the call-in procedure was**

satisfied.

¶ The State argues that the authorization and call-in procedures outlined above were satisfied, and that Barney was vested with the authority to act as substitute justice of the peace when she issued the October 12 and 14, 1996 search warrants. Regarding the first criterion of the authorization procedure, the State argues that Judge Larsen's written requests for waivers of judicial training for his three selected persons together constitute a "list" of qualified substitutes as contemplated by § 3-10-231(2), MCA. The State argues that by submitting the written waiver requests, Judge Larsen substantially complied with § 3-10-231(2), MCA.

¶ Regarding the fourth criterion of the authorization procedure, the State concedes that Barney's oath was not the official oath, but argues that the variance between the two oaths is immaterial. The State argues that Barney's oath was sufficient because it contained the same pledge of constitutional fealty and faithful service as the official oath. In addressing Judge Larsen's error in filing Barney's written oath with the clerk of justice court instead of the county clerk as required by § 3-10-202(1), MCA, the State argues that nothing in § 3-10-231, MCA, or Potter requires that a substitute justice's oath be filed. The State argues alternatively that even if this Court decides that filing the oath is a prerequisite for authorizing substitute justices of the peace under § 3-10-231, MCA, or Potter, the filing of Barney's oath with the clerk of justice court effected substantial compliance.

¶ Regarding the call-in procedure, the State asserts that Judge Larsen's notification to law enforcement of his absence, and his directive that they call either Judge Franks, Judge Fleckenstein, or Barney, satisfied the call-in procedure announced in Potter. The State provides no analysis for this assertion other than stating that under a substantial compliance analysis, whether Judge Larsen, the police dispatcher, or Deputy Peter made the call for a replacement judge is immaterial so long as the call was made at Judge Larsen's directive.

¶ A common thread within each of the State's arguments is the substantial compliance argument. The State does not dispute the rule of Potter that one is vested with the authority to act as substitute justice of the peace only if all criteria of the authorization procedure are followed. Potter, 266 Mont. at 393, 880 P.2d at 1325. However, the State disputes the *degree* to which the criteria must be followed. The State contends that substantial compliance with §§ 3-10-202(1) and -231, MCA, is

sufficient to vest one with the authority to act as substitute justice of the peace, and offers several arguments in support of its position.

¶ First, the State argues that nowhere in <u>Potter</u> did this Court mandate a strict compliance test for evaluating whether one has met the authorization and call-in procedures of §§ 3-10-202(1) and -231, MCA. The State argues that the District Court erroneously pursued a "hyper technical" and overreaching interpretation of <u>Potter</u>, and, in so doing, supplied additional, more severe procedural requirements not mentioned in <u>Potter</u>. The State argues that because the District Court misinterpreted <u>Potter</u>, its reliance on <u>Potter</u> for the conclusion that Barney was not duly authorized to act as substitute justice of the peace was misplaced. Further, the State distinguishes <u>Potter</u> from the instant case, arguing that in <u>Potter</u>, the procedure used to authorize the substitute justice of the peace "was flawed in almost every respect," thus, due to the extreme degree of non-compliance, there was no question that the authorization statute had been violated. <u>Potter</u>, 266 Mont. at 392, 880 P.2d 1324-25. The State argues that in the instant case, the procedure used to authorize Barney substantially complied with all criteria set forth in §§ 3-10-202(1) and -231, MCA. Because the two cases are distinguishable, the State argues that nothing in <u>Potter</u> precludes this Court from ruling that Barney met the authorization and call-in procedures specified in §§ 3-10-202(1) and -231, MCA.

¶ Next, the State argues that although this Court in <u>Potter</u> implicitly characterized the § 3-10-231, MCA, authorization criteria as mandatory rather than directory, *see* <u>Potter</u>, 266 Mont. at 390-92, 880 P.2d 1323-24, such a characterization does not necessitate strict compliance with the statute. As support for this assertion, the State cites a multitude of cases involving jurisdictional issues where this Court has applied varying compliance standards. *Compare* Rambur v. Diehl Lumber Co. (1964), 143 Mont. 432, 433, 391 P.2d 1, 2 (referring to Art. VIII, Secs. 2, 3, and 15, Mont.Const. and RCM 1947, § 93-8003, the Court stated, "[T]he Legislature has enacted statutes providing how appeals may be taken and substantial compliance with these provisions is necessary to give this [C]ourt the right to exercise the jurisdiction granted.") *with* State v. Ward (1994), 266 Mont. 424, 427, 880 P.2d 1343, 1345 ("This Court has consistently held that strict compliance with [§ 46-17-311, MCA, the statute governing appeals from justice or city court] is necessary to perfect an appeal."). Additionally, the State cites several cases involving mandatory statutory provisions where this Court has held that the vesting of jurisdiction may be evaluated by a substantial compliance standard. *See* Gregory v. City of Forsyth

**(1980), 187 Mont. 132, 135, 609 P.2d 248, 250 (holding that "since the jurisdiction of a city to extend its boundaries is a special power, conferred by the legislature, substantial compliance with all the mandatory requirements of statutory law is essential").**

**¶ Lastly, the State argues that technical errors in the authorization and call-in procedures for substitute justices of the peace should not operate to suppress evidence. As support for its argument, the State cites United States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, wherein the United States Supreme Court faced the question of whether the exclusionary rule applied to evidence seized pursuant to a search warrant subsequently determined to be invalid for lack of probable cause, but which officers executed in reasonable, good-faith reliance on its validity. <u>Leon</u>, 468 U.S. at 900, 104 S.Ct. at 3409. The United States Supreme Court decided the question in the negative creating what has been termed the good-faith exception to the exclusionary rule. <u>Leon</u>, 468 U.S. at 922-25, 104 S.Ct. at 3420-22. The Court based its decision on several factors, including the absence of any remedial effect in applying the exclusionary rule under the facts of that case. The Court stated:**

> [T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.

. . .

> [T]o the extent that the [exclusionary] rule is thought to operate as a systemic deterrent on a wider audience, it clearly can have no such effect on individuals empowered to issue search warrants. Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them. Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors . . . .

<u>Leon</u>, 468 U.S. at 917, 104 S.Ct. at 3417.

**¶ The State asserts that the instant case is analogous to <u>Leon</u> in that the invalidity of**

the warrant was due to flaws in its issuance, not to any flaw in its execution by law enforcement. The State urges this Court to apply the reasoning employed in <u>Leon</u> to the instant case and hold that because no remedial purpose would be served, the exclusionary rule does not work to invalidate a search warrant where the procedures used to secure the search warrant effected substantial compliance with the authorization statute.

¶ We reject all of the State's arguments relating to substantial compliance. First, the State's reliance on <u>Leon</u> is misplaced. In <u>Leon</u>, the basic inquiry was whether the purpose of the exclusionary rule would be served in suppressing evidence seized pursuant to a search warrant issued by a judge who mistakenly thought that the warrant was supported by probable cause. <u>Leon</u>, 468 U.S. at 905-22, 104 S.Ct. at 3411-22. In contrast, the basic inquiry in the instant case is not whether the purposes of the exclusionary rule would be served by invalidating the search warrants, but whether Barney had the authority to issue the search warrants at all. *See* <u>Potter</u>, 266 Mont. at 392, 880 P.2d at 1325. We have held that failure to have search warrants issued by a properly appointed judge renders them void *ab initio*, of no force or effect. <u>Potter</u>, 266 Mont. at 393, 880 P.2d at 1325. If a search warrant is void *ab initio*, the inquiry stops and all other issues pertaining to the validity of the search warrant, such as whether the purpose of the exclusionary rule is served, are moot.

¶ Second, the State's argument that this Court has upheld the substantial compliance standard before to cases involving jurisdictional issues is unpersuasive. Not one of those cases involved the authorization and call-in requirements for substitute justices of the peace. Moreover, our review of those cases in which we stated "substantial compliance with these provisions is necessary," or words similar in effect, reveals that we never articulated what exactly "substantial" compliance is. In many of those cases, the word "substantial" could have been replaced with "strict" with no change in the outcome of the case. *See* <u>Rambur</u>, 143 Mont. at 433, 391 P.2d at 2 (Court employed a substantial compliance analysis and dismissed an appeal from an order granting motion to dismiss on the ground that "R.C.M.1947, § 93-8003, specifies the orders from which an appeal may be taken and an order sustaining a motion to dismiss is not one of them.").

¶ The State urges this Court to hold that substantial compliance with the authorization and call-in procedures for substitute justices of the peace is sufficient. In <u>Potter</u>, we held:

> Unless the procedures required by [§ 3-10-231, MCA] and the Commission Rules are followed, then no substitute justice is appointed, and the person seeking to exercise the powers of a judge as his substitute has no authority or jurisdiction to do so. That person is, quite simply, not a judge . . . .

Potter, 266 Mont. at 393, 880 P.2d at 1325. We determine that "follow" means follow in the plain meaning sense of the word. Clearly, the procedures for authorizing and calling in a substitute justice of the peace were not followed in the instant case.

¶ **The record shows that Judge Larsen failed to create a list of proposed substitutes as required by § 3-10-231, MCA. We do not agree with the State that submitting the written waiver request forms for proposed substitutes was functionally equivalent to creating a list. In construing § 3-10-231, MCA, we must give effect to all of its provisions and particulars. Section 1-2-101, MCA. Section 3-10-231, MCA, specifically requires the creation of a list in addition to the submission of requests for waivers of training. To give effect to both provisions, we hold that one is not the functional equivalent of the other.**

¶ **Next, the constitutional oath of office was not properly administered to Barney. We do not believe that the pledge to "discharge the duties of my office with fidelity" is the same as the pledge to "serve in the capacity of substitute Justice of the Peace or City Judge to the best of my abilities." We believe the complete omission of one pledge and replacement with another is a major discrepancy in the authorization procedure. Further, Barney's oath of office was not filed with the county clerk pursuant to § 3-10-202(1), MCA. Again, we do not view filing the oath with the justice court clerk functionally equivalent to filing it with the county clerk. The State concedes that the statutory intent of filing is notice. Someone searching for a substitute's oath would presumably inquire at the county clerk's office because that is the place where it is required to be filed. We fail to see how the purpose of notice is served by filing the oath in a place where no one expects it to be filed.**

¶ **Lastly, Judge Larsen's notification to law enforcement of his absence, and his directive that they call either Judge Franks, Judge Fleckenstein, or Barney, failed to satisfy the call-in procedure articulated in § 3-10-231, MCA, and Potter. If an elected justice of the peace is readily available, he or she must be called to act by the justice**

for whom the replacement is needed. Section 3-10-231(3) and (4), MCA; <u>Potter</u>, 266 Mont. at 391, 880 P.2d at 1324. Judge Larsen did not call and designate another justice of the peace to assume jurisdiction in his absence. Rather, Judge Larsen simply provided law enforcement with a "menu" of substitutes from which to choose. This procedure clearly violates § 3-10-231, MCA, and encourages "judge-shopping." We cannot condone such a practice. Moreover, we have held that in finding a replacement judge, an elected justice of the peace or a city judge must be called before a substitute justice of the peace from the list provided for in § 3-10-231, MCA, is called. <u>Potter</u>, 266 Mont. at 391, 880 P.2d at 1324. In securing the October 14, 1996 search warrant, law enforcement made no attempt to call an elected justice of the peace before calling Barney. Again, this procedure clearly violates the rule announced in <u>Potter</u>.

¶ We hold that the District Court's finding that Barney was not a duly authorized justice of the peace when she issued the October 12 and 14, 1996 search warrants was supported by substantial evidence and, therefore, was not clearly erroneous. We hold that the District Court correctly interpreted the law in concluding that Barney was not a duly authorized justice of the peace, and that the search warrants were void *ab initio*.

¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

No

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER