IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 12-0182

2012 MT 134

_____

EMILY BLODGETT,

     Petitioner,

    v.

JUSTICE COURT, MISSOULA COUNTY,
TOWNSHIP NO. 2, JUDGE KAREN A.
ORZECH, Presiding,

     Respondent.

OPINION
AND
ORDER

_____

¶1    On March 20, 2012, Emily Blodgett filed with this Court a Petition for a Writ of Supervisory Control wherein she alleged that the Missoula County Justice Court violated §§ 3-10-231 through -234, MCA; Article VII, Sections 1 and 5 of the Montana Constitution; and several of this Court's prior decisions, when it allowed a retired District Court Judge to preside over her jury trial. Blodgett contended that the presiding Justice of the Peace Karen Orzech improperly called in retired District Court Judge Douglas Harkin to preside over Blodgett's jury trial, even though Judge Orzech was present in her court, but otherwise involved with another case.

¶2    Because Judge Orzech had not had an opportunity to respond to Blodgett's petition, we issued an Order on March 21, 2012, granting Judge Orzech, or her designee, time to prepare, file and serve her response to Blodgett's petition. We also ordered that all further proceedings in Blodgett's underlying case be stayed pending our decision in

1

this matter. In addition, we invited the Attorney General to participate in this case, should he choose to do so, because our decision in this matter may affect other justice courts in the State.[1] On May 8, 2012, the Montana Association of Criminal Defense Lawyers moved for leave of this Court to appear as *amicus curiae* in this matter.

¶3 Judge Orzech has now filed her response in this case wherein she states that § 3-10-231, MCA, provided the authority for her to call in Judge Harkin as a substitute justice of the peace. Judge Orzech also asserts in her response that Blodgett has not shown that § 3-10-231, MCA, was not complied with or that Blodgett was prejudiced by having Judge Harkin preside over her jury trial.

## Background

¶4 On August 11, 2011, Blodgett was charged with a violation of § 45-5-624, MCA, minor in possession of alcohol, a third or subsequent offense. The charge was filed in the Justice Court of Missoula County, and was assigned to Judge Orzech in department two. Blodgett made her initial appearance and pled not guilty. After rejecting a plea agreement in the case, Judge Orzech set the case for trial on February 27, 2012.

¶5 Because Judge Orzech had another case with a speedy trial deadline close to Blodgett's, Judge Orzech set both cases for trial on the same date with the hope that at least one of the cases would be resolved prior to trial. However, neither case was resolved, and both cases proceeded to trial as scheduled.

---

[1] We note that the Attorney General did not file a separate response, but Mark Mattioli, Appellate Services Bureau Chief, signed Judge Orzech's response on behalf of Shawn Thomas, Deputy County Attorney for Missoula County.

2

¶6    John Odlin, the Justice of the Peace for department one in Missoula County, was holding his regular court that day, and was not available to preside over either of Judge Orzech's jury trials.  Rather than postpone one of the trials, Judge Orzech called in Judge Harkin, who had retired from the bench some time previously, to preside over Blodgett's jury trial while Orzech presided over the other jury trial.

¶7    Before the jury was sworn in her case, Blodgett objected to Judge Harkin's authority to proceed, but Judge Harkin overruled the objection and proceeded with trial.  At the conclusion of the trial, the jury found Blodgett guilty.  Judge Harkin set sentencing for March 20, 2012, and ordered the State to file a sentencing memorandum detailing Blodgett's criminal history and whether she had followed the terms of any prior sentences.

¶8    Blodgett filed this Petition for a Writ of Supervisory Control prior to sentencing. Blodgett also filed a Petition for a Writ of Certiorari to bring the record of the Justice Court to this Court.  We stayed the proceedings in Justice Court pending our decision in this matter.

**Discussion**

¶9    This Court has general supervisory control over all other courts and may, on a case-by-case basis, supervise another court by way of a writ of supervisory control. *State v. Dist. Court of the Eighteenth Judicial Dist.*, 2010 MT 263, ¶ 29, 358 Mont. 325, 246 P.3d 415 (citing Mont. Const. art. VII, § 2(2); M. R. App. P. 14(3)).  Supervisory control is an extraordinary remedy which we exercise only when (1) urgency or emergency factors exist making the normal appeal process inadequate, (2) the case involves purely

3

legal questions, and (3) one or more of the following circumstances exist: (a) the other court is proceeding under a mistake of law and is causing a gross injustice, (b) constitutional issues of state-wide importance are involved, or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. *Lamb v. Dist. Court of the Fourth Judicial Dist.*, 2010 MT 141, ¶ 10, 356 Mont. 534, 234 P.3d 893.

¶10 Having reviewed Blodgett's petition and Judge Orzech's response wherein Judge Orzech concedes that, under these circumstances, Blodgett's Petition for Writ of Supervisory Control is an appropriate remedy for the issue at hand, we conclude that Blodgett's petition implicates the factors set out above that would militate in favor of this Court accepting supervisory control in this case. In particular, we conclude that the Justice Court is proceeding under a mistake of law and is causing a gross injustice. Thus, we accept supervisory control in this matter, and we proceed to address the main issue in this case which is: Whether Judge Harkin was vested with authority under the provisions set forth in § 3-10-231, MCA, to act as a substitute justice of the peace and preside over Blodgett's jury trial.

¶11 "The term 'judge' (which includes municipal and city court judges and justices of the peace, § 3-1-1501(2), MCA), means a person who is 'vested by law' with the power to perform judicial functions . . . ." *Potter v. Dist. Court of the Sixteenth Judicial Dist.*, 266 Mont. 384, 393, 880 P.2d 1319, 1325 (1994). And, one is vested with the authority to act as a substitute justice of the peace only if all of the criteria of the authorization procedure are followed. *State v. Vickers*, 1998 MT 201, ¶ 18, 290 Mont. 356, 964 P.2d 756.

4

¶12   The judicial power of this State derives from Article VII of the Montana Constitution.  Section 5 of that Article provides for justices of the peace:

> (1) There shall be elected in each county at least one justice of the peace with qualifications, training, and monthly compensation provided by law. There shall be provided such facilities that they may perform their duties in dignified surroundings.
> (2)  Justice courts shall have such original jurisdiction as may be provided by law. They shall not have trial jurisdiction in any criminal case designated a felony except as examining courts.
> (3)  The legislature may provide for additional justices of the peace in each county.

Under the power granted it by Article VII, Section 5 of the Montana Constitution, the Legislature has enacted the following statutory scheme to appoint an individual to lawfully exercise the powers and authority of a judge as a substitute for a duly elected justice of the peace:

> **Circumstances in which acting justice called in − by whom.** (1) Whenever a justice of the peace is disqualified from acting in any action because of the application of the supreme court's rules on disqualification and substitution of judges, 3-1-803 and 3-1-805, the justice of the peace shall either transfer the action to another justice's court in the same county or call a justice from a neighboring county to preside.
> (2)  (a) The following requirements must be met to qualify a substitute for a justice of the peace:
> (i)  Within 30 days of taking office, a justice of the peace shall provide a list of persons who are qualified to hold court in the justice's place during a temporary absence when another justice or city judge is not available.  The persons listed must be of good moral character and have community support, a sense of community standards, and a basic knowledge of court procedure.
> (ii)  The sitting justice of the peace shall request and obtain from the commission on courts of limited jurisdiction established by the supreme court a waiver of training for the substitutes.
> (iii)  Each person on the list, provided for in subsection (2)(a)(i), shall subscribe to the written oath of office as soon as possible after the person has received a waiver of training from the supreme court.  The oath

may be subscribed before any member of the board of county commissioners or before any other officer authorized to administer oaths.

(b) The list of qualified substitutes, the written oath, and the commission's written approval and waiver of training for those substitutes, pursuant to subsection (2)(a)(ii), must be filed with the county clerk as provided in 3-10-202.

(c) A county clerk may provide a current list of qualified and sworn substitutes to local law enforcement officers.

(3) Whenever a justice is sick, disabled, or absent, the justice may call in another justice, if there is one readily available, or a city judge or a person from the list provided for in subsection (2) to hold court for the absent justice until the absent justice's return. If the justice is unable to call in a substitute, the county commissioners shall call in another justice, a city judge, or a person from the list provided for in subsection (2).

(4) During the time when a justice of the peace is on vacation or attending a training session, another justice of the peace of the same county is authorized to handle matters that otherwise would be handled by the absent justice. When there is no other justice of the peace in the county, the justice of the peace may designate another person in the same manner as if the justice were sick or absent.

(5) A justice of the peace of any county may hold the court of any other justice of the peace at that justice's request.

Section 3-10-231, MCA.[2]

¶13 This Court held in *Vickers*, that before an acting justice of the peace may exercise jurisdiction, strict compliance with the provisions of § 3-10-231, MCA, is required. *Vickers*, ¶¶ 24-29. Consequently, under this statute, an acting justice of the peace may be called in only when the elected justice of the peace has been disqualified or whenever the elected justice of the peace is sick, disabled or absent.

¶14 In the instant case, Blodgett contends that an acting or substitute justice of the peace may not hold court at the same time that the elected justice of the peace is holding court. Blodgett argues that because Judge Orzech was present in court holding trial in

_____

[2] This statute was last amended in 1997 in response to this Court's decision in *Potter*. Sec. 1, Ch. 150, L. 1997.

6

another matter, she was not disqualified, sick, disabled or absent as required by § 3-10-231, MCA. Thus, Judge Orzech could not call in a substitute justice of the peace to preside over Blodgett's jury trial.

¶15 Judge Orzech argues that we should liberally construe the term "absent" in § 3-10-231(3), MCA, to mean "unavailable" or "unable to act" rather than to strictly construe the term to require that the justice of the peace be physically outside of the courthouse. Judge Orzech maintains that under Blodgett's interpretation of § 3-10-231(3), MCA, if a justice of the peace falls inside the courthouse and is unable to walk, he or she would have to be carried outside the courthouse and remain there while the substitute justice of the peace acts on his or her behalf. Judge Orzech's hypothetical misses the mark since, rather than physically forcing an absence in this scenario, the injured justice of the peace would simply be considered sick or disabled under § 3-10-231(3), MCA.

¶16 Nevertheless, we need not resolve this question of statutory interpretation under the facts here because we hold that the requirements in § 3-10-231(2), MCA, for qualifying an individual as a substitute justice of the peace were not met in this case. Hence, for purposes of our discussion, we will assume that Judge Orzech was entitled to call in a substitute justice of the peace.

¶17 Under § 3-10-231(2), MCA, several requirements must be met to qualify an individual to act as a substitute justice of the peace. First, under § 3-10-231(2)(a)(i), MCA, Judge Orzech was required within 30 days of taking office to provide a list of persons who are qualified to hold court in her absence when another justice or city judge

7

is not available. Judge Orzech has not presented this Court with any evidence to indicate that she established such a list or that Judge Harkin's name was on said list if one exists.

¶18 Second, under § 3-10-231(2)(a)(ii), MCA, Judge Orzech was required to request and obtain from the Commission on Courts of Limited Jurisdiction a waiver of training for the potential substitutes on her list. While Judge Harkin is obviously an experienced and qualified jurist, there is nothing before this Court to indicate that Judge Orzech requested or obtained a waiver of training for Judge Harkin.

¶19 Third, each person on Judge Orzech's list is required to "subscribe to the written oath of office as soon as possible *after* the person has received a waiver of training" from this Court. Section 3-10-231(2)(a)(iii), MCA (emphasis added). Again, there is nothing before this Court indicating that Judge Harkin subscribed to a written oath *after* receiving a waiver of training.

¶20 Fourth, Judge Orzech was required to file the list of qualified substitutes, the written oath, and the commission's written approval and waiver of training for the substitutes with the county clerk. Sections 3-10-202 and -231(2)(b), MCA. In her affidavit filed with her response, Judge Orzech does not indicate that this procedure was followed.

¶21 Fifth, and finally, we stated in *Vickers* that "a sitting justice of the peace must first attempt to call in another duly elected justice of the peace, if there is one readily available, or a city judge before calling in a substitute judge from the list provided for in § 3-10-231, MCA." *Vickers*, ¶ 13 (citing *Potter*, 266 Mont. at 391, 880 P.2d at 1324); *see also State v. Beaupre*, 2004 MT 300, ¶ 21, 323 Mont. 413, 102 P.3d 504. While

8

Judge Orzech indicated that Judge Odlin, the other duly elected justice of the peace in Missoula County, was unavailable, Judge Orzech does not indicate whether she attempted to contact a city judge before calling in Judge Harkin.

¶22 We held in *Potter*, that "[u]nless the procedures required by [§ 3-10-231, MCA] are followed, then no substitute justice is appointed, and the person seeking to exercise the powers of a judge as his substitute has no authority or jurisdiction to do so. That person is, quite simply, not a judge as he has not been vested by law with the power to perform the functions of a judge." *Potter*, 266 Mont. at 393, 880 P.2d at 1325; *accord Pinnow v. Montana State Fund*, 2007 MT 332, ¶ 24, 340 Mont. 217, 172 P.3d 1273.

¶23 In this case, although Judge Harkin was qualified by his training and experience to act as a substitute justice of the peace, he was not one at the time he presided over Blodgett's trial because the statutory procedures to vest him with the power to perform judicial functions as a substitute justice of the peace had not been followed. Consequently, any purported judicial acts performed by Judge Harkin in this case are void *ab initio*. *See Vickers*, ¶ 29. Therefore,

¶24 IT IS ORDERED that Blodgett's Petition for a Writ of Supervisory Control is GRANTED. We hold that the jury trial in Missoula County Justice Court was void *ab initio* and we remand this case for further proceedings.

¶25 IT IS FURTHER ORDERED that Blodgett's Petition for a Writ of Certiorari is DENIED as moot.

¶26 IT IS FURTHER ORDERED that the Motion by Montana Association of Criminal Defense Lawyers for Leave to Appear as *Amicus Curiae* is DENIED.

¶27 IT IS FURTHER ORDERED that the stay granted in this matter by Order dated March 21, 2012, is lifted.

¶28 The Clerk of this Court is directed to give notice of this Order to Blodgett at her last known address, to the Hon. Karen Orzech, Justice of the Peace, and to all counsel of record.

DATED this 26th day of June, 2012.

/S/ JAMES C. NELSON

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ MICHAEL E WHEAT