No. 05-708

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 87

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

RICHARD A. DASEN, SR.,

      Defendant and Appellant.

APPEAL FROM:     The District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-04-071(c),
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Daniel Donovan, Thompson, Potts & Donovan, P.C., Great Falls, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; Mark W. Mattioli, Assistant
Attorney General, Helena, Montana

          Ed Corrigan, County Attorney; Dan Guzynski and Lori Adams,
Deputy County Attorneys, Kalispell, Montana

          Submitted on Briefs:  January 4, 2007

          Decided:  April 3, 2007

Filed:

                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Defendant Richard Dasen appeals his conviction of promotion of prostitution (a felony), sexual abuse of children (a felony), and three felony counts of prostitution. We affirm.

¶2     We restate the issues as follows:

¶3     I. Did the District Court err in concluding that the second search warrant was valid because it was based on a source independent of the first, unconstitutional search?

¶4     II. Did the District Court give sufficient unanimity jury instructions for Counts III and IV?

¶5     III. Were the second or subsequent prostitution counts (Counts VI, XII, XIV) properly charged as felonies?

¶6     IV. Did the District Court prevent Dasen from presenting a "mistake of age" defense to the jury?

## BACKGROUND

¶7     Dasen was arrested on February 24, 2004, and charged with sexual intercourse without consent. Dasen pled not guilty. During pretrial proceedings, the State twice amended the information to add additional charges against Dasen. The third, and final, amended information charged the following counts: (I) sexual intercourse without consent; (II) aggravated promotion of prostitution; (III) promotion of prostitution; (IV) sexual abuse of children; (V) misdemeanor prostitution; (VI) through (XIV) felony prostitution (each count against separate, named victims).

2

¶8    Following an eighteen-day trial and over ten hours of deliberation, the jury convicted Dasen of Counts III, IV, V, VI, XII, XIV. The District Court imposed a two-year sentence without the possibility of parole for Count XIV as well an eighteen-year suspended sentence for the remaining counts. The court also imposed a fine of $11,350 and restitution of $1,125. Dasen subsequently filed a timely notice of appeal.

¶9    Additional, issue specific facts are set out below.

## DISCUSSION

¶10   **I. Did the District Court err in concluding that the second search warrant was valid because it was based on a source independent of the first, unconstitutional search?**

¶11   A. <u>Applicable Facts</u>

¶12   On February 11, 2004, the State applied for search warrants for Dasen's residence and two businesses in which Dasen had an interest. After finding that probable cause existed, Judge Stadler issued three search warrants. Although the applications particularly described the items to be seized, the warrants themselves did not. When the warrants were served, the officers did not present the warrant applications. Accordingly, neither the warrants nor any accompanying documents particularly described the items to be seized. Two weeks later the United States Supreme Court held, in *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284 (2004), that if the application is not served with the warrant, the warrant itself must particularly describe the items to be seized.

¶13   Two days after *Groh* was decided, one of Dasen's businesses filed a motion requesting that the court order the seized property returned in light of *Groh*. Following a

3

show cause hearing on March 2, 2004, the court ordered all items returned. Later that same day and the next, the State submitted a second round of warrant applications to the court administrator. Although Judge Stadler was the presiding judge, the applications were reviewed and approved by Judge Curtis, a fellow Eleventh Judicial District Court Judge. Judge Stadler, anticipating a second warrant application in light of the original warrant's invalidity, had requested that the court administrator submit any new applications to one of the other district court judges "to insure and guarantee an independent review."

¶14 The State returned the previously seized items and re-seized them pursuant to the second, facially valid search warrant which particularly described the items to be seized. Dasen, however, in a motion to suppress, argued that the second search warrant was invalid because it was fruit of the poisonous tree—that is, it was a product of the first, invalid search. Dasen also contended that Judge Curtis had no jurisdiction to approve the warrant because she had previously been substituted at Dasen's request pursuant to § 3-1-804, MCA. Judge Stadler disagreed, concluding that the evidence necessary to show probable cause for the second warrant was obtained from a source independent of the first search and thus met an exception to the exclusionary rule. Dasen appeals the denial of his motion to suppress.

¶15 B. Standard of Review

¶16 We review a district court's denial of a motion to suppress to assess whether there is substantial credible evidence to support the court's findings of fact, and whether those

findings were correctly applied as a matter of law. *State v. Therriault*, 2000 MT 286, ¶ 24, 302 Mont. 189, ¶ 24, 14 P.3d 444, ¶ 24.

¶17    C.  <u>Was the second warrant based on information from an independent source</u>?

¶18    Dasen argues that it is not possible that the second search warrant was independent from the first, because the taint of the first search could not be "purged." The State held and analyzed the property for almost one month before returning it, only to immediately re-seize the property under the second search warrant. Further, the State concealed its plans from Judge Stadler and Dasen. Finally, Dasen contends that even if the second search was valid under federal law, the "highly irregular circumstances" do not pass constitutional muster under Montana's stronger right to privacy. According to Dasen, all items seized in the second search constitute "fruit of the poisonous tree" and must be suppressed.

¶19    The "fruit of the poisonous tree" doctrine forbids the use of evidence which comes to light as a result of the exploitation of an initial illegal act of the police. *Therriault*, ¶ 57. However, following federal case law, we have set forth three exceptions to this doctrine. The evidence is admissible if it is (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation. *Therriault*, ¶ 58.

¶20    The United States Supreme Court analyzed the independent source doctrine in the context of a second search pursuant to a warrant that was preceded by an initial, unlawful search in *Murray v. U.S.*, 487 U.S. 533, 108 S. Ct. 2529 (1988). The defendant argued,

as does Dasen, that the independent source exception should not apply to the second search. *Murray*, 487 U.S. at 537, 108 S. Ct. at 2533. The Court, however, concluded "if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply." Invoking the exclusionary rule would put the police not in the same position, as federal and Montana case law require, but in a worse position. *Murray*, 487 U.S. at 541, 108 S. Ct. at 2535 (citations omitted); *see also Therriault*, ¶ 57. "The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue . . . ." *Murray*, 487 U.S. at 542, 108 S. Ct. at 2536. The Court does note, however, that genuine independence "may well be difficult to establish where the seized goods are kept in the police's possession." *Murray*, 487 U.S. at 542, 108 S. Ct. at 2535.

¶21 Here, the information provided to secure the second warrant was information the State obtained prior to the first search warrant, as well as information obtained from additional sources not connected to or derived from the first search. The State submitted the same information used to secure the first search warrant, which was obviously obtained without the information gained in the first search. Further, the few new pieces of information submitted were independently obtained as well, such as details provided by one of the victim's grandmother, and information concerning a wire transfer known to the State prior to the first search. Finally, while the first search was a factor in obtaining the second search warrant, in that the invalidity of the first search necessitated a second

warrant, the State nevertheless possessed sufficient independent information to "purge the taint" of the first search. *See Therriault*, ¶ 59.

¶22    We conclude, therefore, that the information used to secure the second warrant was ascertained through sources sufficiently independent of the first, invalid search to preclude application of the "fruit of the poisonous tree" doctrine.

¶23    D. <u>Did Judge Curtis have jurisdiction to issue the second search warrant</u>?

¶24    Dasen also argues that Judge Curtis had no power to issue the second warrant because she lost jurisdiction when substituted pursuant to § 3-1-804, MCA. The second warrant was therefore, according to Dasen, void *ab initio*.

¶25    Dasen cites to our holding in *Erickson v. Hart*, 231 Mont. 7, 9, 750 P.2d 1089, 1091 (1988), for the proposition that after substitution, a district court judge has no jurisdiction to issue findings or orders. However, *Erickson* is distinguishable from the situation here. The judge in *Erickson* issued an order temporarily adjudicating ownership of the property at issue in the case, after one of the parties had moved for substitution. *Erickson*, 231 Mont. at 9, 750 P.2d at 1091. A search warrant, however, is not a "finding" or an "order" as contemplated by our holding in *Erickson*. A search warrant may be issued by any "district judge within this state." Section 46-5-220(2)(b), MCA. Further, Judge Stadler intentionally requested that the court administrator submit the application for the second search warrant to another judge to ensure an independent review. Consequently, Judge Curtis issued the second search warrant with the authority of acting Judge Stadler, pursuant to his powers under § 3-1-113, MCA (allowing a judge

7

to adopt "any suitable process or mode of proceeding . . . which may appear most conformable to the spirit of this code").

¶26 Dasen also points to our holding in *State v. Vickers*, 1998 MT 201, 290 Mont. 356, 964 P.2d 756, for his contention that a warrant issued by a judge who is not "properly appointed" is void *ab initio*. Again, this case is inapplicable. In *Vickers*, we held that an improperly appointed substitute justice of the peace, who had no power to act at all, could not issue a valid search warrant. *Vickers*, ¶ 29. Judge Curtis, however, like all properly elected district court judges in the state, had general authority to issue search warrants pursuant to § 46-5-220(2)(b), MCA.

¶27 Judge Curtis thus had jurisdiction to issue the second search warrant. Accordingly, we conclude that the District Court properly denied Dasen's motion to suppress.

¶28 **II. Did the District Court give sufficient unanimity jury instructions for Counts III and IV?**

¶29 A. <u>Applicable Facts</u>

¶30 The final amended complaint charged Dasen, under Count III, with promotion of prostitution, and under Count IV, with sexual abuse of children. Count III specifically charged that "[Dasen], on or between July 1, 1999 and February 7, 2004 . . . purposely or knowingly encouraged, induced or otherwise causing [sic] another to become or remain a prostitute . . . ." Count III then listed sixteen "principle [sic] witnesses/victims in support of [the charge]." Count IV specifically charged that "[Dasen], on or between October 1, 2003 and February 1, 2004 . . . knowingly photographed, filmed or recorded children

8

engaged in sexual conduct, namely, V.H. (DOB: 1/14/86) and/or K.E. (DOB: 5/22/87) . . . ."

¶31 At trial, the court gave a *Weaver* unanimity instruction for Count III. *See State v. Weaver*, 1998 MT 167, ¶ 39, 290 Mont. 58, ¶ 39, 964 P.2d 713, ¶ 39. A specific unanimity instruction was not provided, however, for Count IV, although a general unanimity instruction applicable to all charges was given. During the in-chambers discussion concerning jury instructions, Dasen suggested "wouldn't it be more proper for us to put the names of the people with regard to all of the counts." The court disagreed, and pointed out that a "Weaver instruction" was being given as to Count III. Dasen did not object, but instead replied "[y]our're right, I agree."

¶32 The jury then convicted Dasen on Counts III and IV. Dasen appeals the convictions, claiming that the jury was not adequately instructed as to the requirement that there be a unanimous verdict concerning the identity of the victims.

¶33 B. <u>Standard of Review</u>

¶34 We review jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. Further, we recognize that a district court has broad discretion when it instructs a jury. *Weaver*, ¶ 28 (citations omitted).

¶35 C. <u>Discussion</u>

¶36 Dasen contends that the jury was not instructed to unanimously agree as to the victim for Counts III and IV.

9

¶37 We have consistently held that we will not consider issues raised for the first time on appeal. *Weaver*, ¶ 24 (citations omitted). Here, while Dasen generally suggested listing the victims for each count, he failed to specifically argue that a unanimity instruction regarding the identity of the victims was necessary. He also agreed with the court that the problem was sufficiently addressed by the *Weaver* instruction. Dasen, therefore, failed to raise the issue below.

¶38 Nonetheless, Dasen requests that we consider the issue on appeal under the plain error doctrine. This Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made, where failing to review the claimed error may: (1) result in a manifest miscarriage of justice; (2) leave unsettled the question of the fundamental fairness of the trial or proceedings; or (3) compromise the integrity of the judicial process. *Weaver*, ¶ 25 (citations omitted). We utilize plain error review sparingly, on a case-by-case basis. *Weaver*, ¶ 25 (citations omitted).

¶39 The right to a unanimous jury verdict represents a fundamental right. *Weaver*, ¶ 26. In *Weaver*, we determined that uncertainty about a unanimous verdict brings into question the fundamental fairness of a trial. *Weaver*, ¶ 27. We went on to provide two sample instructions for situations where, as in *Weaver*, there is the possibility of jury confusion in regards to a unanimous verdict. *Weaver*, ¶ 39.

¶40 1. *Count III*

¶41 Here, the court gave the *Weaver* instruction for Count III. The instruction read:

> The Defendant is charged [with promotion of prostitution]. In order to find the Defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act constituting the crime within the period alleged. And, in order to find the Defendant guilty, **you must unanimously agree upon the commission of the same specific act** constituting the crime within the period alleged. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

Emphasis added. Dasen contends this instruction failed to properly inform the jury that it needed to unanimously agree as to the *victim* of promotion of prostitution as well as to a specific act. However, the jury was required to "unanimously agree upon the commission of the same specific act." In order to agree upon the same specific act, the jury necessarily had to agree upon a particular time, victim, and criminal act. The Weaver instruction left no room for uncertainty about whether the jury reached a unanimous verdict concerning the victim of Count III, because "juries are presumed to follow the law as given them." *State v. Turner*, 262 Mont. 39, 55, 864 P.2d 235, 245 (1993) (citations omitted). As to Count III, the criteria for plain error review have thus not been met.

¶42    2. *Count IV*

¶43    While a *Weaver* instruction was not given for Count IV, the charge of sexual abuse of children is specific enough that there was no chance of jury confusion. The charge involved a single criminal episode, which occurred at a given location with two discrete victims (K.E. and V.H.), and the State properly viewed and charged the crime as one offense. The jury only needed to find that Dasen had knowledge of the fact that one of the victims was underage, because Dasen did not contest that he was there and took photos of the girls, and it was undisputed that the girls were, in fact, under eighteen at the

11

time. Additionally, a unanimity instruction as to the victim of the crime was unnecessary because the two victims, K.E. and V.H., involved "equivalent blameworthiness," as both were underage. *Cf. Kills on Top v. State*, 273 Mont. 32, 56, 901 P.2d 1368, 1383-84 (1995). Consequently, we decline to undertake plain error review concerning the jury instructions given by the District Court for Count IV, because there is no uncertainty as to whether the jury reached a unanimous verdict.

¶44 **III. Were the second or subsequent prostitution counts (Counts VI, XII, XIV) properly charged as felonies?**

¶45 A. Applicable Facts

¶46 In the third and final amended information, the State alleged ten counts of prostitution (Counts V through XIV), each with a different person. Count V was charged as a misdemeanor. The subsequent counts were labeled as second or subsequent offenses pursuant to § 45-5-601(2)(b), MCA, and thus charged as felonies. The felony prostitution charges (Counts VI-XIV) did not reference the misdemeanor charge (Count V).

¶47 The State, in its motion for leave to file the third amended information, relied upon *State v. Tichenor*, 2002 MT 311, 313 Mont. 95, 60 P.3d 454, as authority to charge Counts VI through XIV as felonies. Dasen subsequently filed a motion to dismiss the third amended information, arguing, among other things, that the State incorrectly relied upon *Tichenor* because *Tichenor* "does not contemplate nor propose that a person could be charged with a misdemeanor against one person and a felony against a completely different person." The court denied the motion to dismiss and Dasen appeals from that denial.

12

¶48    B. <u>Standard of Review</u>

¶49    We review the denial of a motion to dismiss in a criminal case to determine whether the conclusions of the district court are correct. *Tichenor*, ¶ 18 (citations omitted).

¶50    C. <u>Discussion</u>

¶51    Dasen first argues, as he did below, that *Tichenor* is inapposite. In *Tichenor*, where we held that the first stalking count properly operated to transform the second stalking count into a felony, the two counts alleged conduct against the same victim, the defendant's girlfriend. *Tichenor*, ¶¶ 31-35. In the case at bar, however, there is a different alleged victim in each prostitution count. According to Dasen, a misdemeanor offense against one person cannot transform a second offense against a different person into a felony.

¶52    The State counters, and we agree, that the fact that Dasen's crimes involved separate victims is actually a factor supporting the imposition of a felony sentence. In *Tichenor*, the victim's identity was relevant because the defendant argued that the two counts of stalking were actually one count, precisely because they occurred against the same person within a short period of time. *Tichenor*, ¶¶ 25-28. We concluded that because there was "a break in [the defendant's] course of conduct" *and* because a *second* individual, the victim's daughter, was harassed by the defendant, that the prosecutor acted within her discretion in charging two offenses. *Tichenor*, ¶ 28. In *Tichenor*, therefore, the uniformity of the victim was a hurdle to proving that there were two distinct crimes. In the case *sub judice*, the multiplicity of victims bolsters the State's

13

argument that the subsequent prostitution counts were distinct crimes, to be treated as felonies under § 45-5-601(2)(b), MCA.

¶53 Dasen, relying on *United States v. Rodriguez-Gonzales*, 358 F.3d 1156 (9th Cir. 2004), also argues that when a prior conviction is used to transform a misdemeanor into a felony, the prior conviction is more than a sentencing factor and "must be charged explicitly." *Rodriguez-Gonzales*, 358 F.3d at 1161. Thus, according to Dasen, the subsequent prostitution counts, standing by themselves without reference to a first conviction, must be treated as misdemeanors. Dasen, in his reply brief, further contends that a subsequent "felony" charge must be based on a prior "conviction" as opposed to prior charges in the same information.

¶54 Dasen, however, failed to raise this theory below. In his motion to dismiss, Dasen only argued that "a 'second or subsequent offense' when multiple persons/victims are involved is misplaced and faulty." The motion to dismiss did not claim, as Dasen now argues on appeal, that the subsequent felony prostitution counts needed to reference the misdemeanor prostitution count, that a subsequent felony prostitution count must be based on a prior "conviction," or that the Ninth Circuit's reasoning in *Rodriguez-Gonzales* is applicable.

¶55 We have made it clear that a party's theory may not change on appeal, because it is fundamentally unfair to fault a district court for failing to rule correctly on an issue it did not have the opportunity to consider. *State v. Johnson*, 2005 MT 318, ¶ 13, 329 Mont. 497, ¶ 13, 125 P.3d 1096, ¶ 13 (citations omitted). Dasen contends that by filing his motion to dismiss the third amended information and supporting brief, he properly

14

preserved the issues he now argues on appeal. However, Dasen did not argue that a misdemeanor prostitution charge may not be used to transform subsequent charges in the same information into felonies, and we decline to address that issue for the first time on appeal.

¶56   Consequently, we affirm the District Court's denial of Dasen's motion to dismiss Counts VI through XIV.

¶57   **IV.  Did the District Court prevent Dasen from presenting a "mistake of age" defense to the jury concerning Count IV?**

¶58   A.  Applicable Facts

¶59   In Count IV, Dasen was charged with sexual abuse of children. At the time of the offense, the terms "child" and "children" were not defined.[1]  The District Court, therefore, in an instruction describing when a person commits the offense of sexual abuse of children, added the following definition: "[f]or purposes of the offense of sexual abuse of children, a child is anyone less than eighteen years of age."  Dasen objected to the court's definition of "child," noting that it is "an incorrect statement of the definition of a child."

¶60   The court did not instruct the jury, specifically, that Dasen's reasonable belief that the girls he photographed were over eighteen years old would constitute a defense to the charge of sexual abuse of children. However, Dasen did not submit a "mistake of age" instruction concerning the sexual abuse of children charge, though Dasen did submit such

---

[1]In 2005, after Dasen was charged, § 45-2-101, MCA, was amended to include a definition of "child" or "children" as "any individual or individuals under 18 years of age, unless a different age is specified."  Section 45-2-101(6), MCA.

15

an instruction concerning the sexual intercourse without consent charge (Count I).[2] In fact, it was the State, not Dasen, that argued for an instruction that stated "a person acts knowingly with respect to a specific fact [referring to the girl's age] when the person is aware of a high probability of that fact's existence." The State explained that the instruction was important to give because Dasen was going to argue that he "thought [the girls] were over 18." The court refused to give the instruction, and commented "I don't think that [Dasen's] idea of what age they were has anything to do with that offense."

¶61 Dasen appeals, claiming the court's jury instruction and "ruling" prevented him from presenting the defense of mistake of age to Count IV.

¶62 B. Standard of Review

¶63 As discussed in Issue II, we review jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *Weaver*, ¶ 28 (citations omitted). Further, since a trial court has broad discretion when instructing a jury, an error in instructing will be reversible only if the jury instructions prejudicially affect the defendant's substantial rights. *State v. Maloney*, 2003 MT 288, ¶ 14, 318 Mont. 66, ¶ 14, 78 P.3d 1214, ¶ 14.

¶64 A district court's statutory interpretation is a question of law, which we review to determine whether it is correct. *State v. Heath*, 2004 MT 58, ¶ 8, 320 Mont. 211, ¶ 8, 89 P.3d 947, ¶ 8 (citations omitted).

---

[2]Dasen withdrew the Count I "mistake of age" instruction during jury instruction deliberation.

¶65    C. Discussion

¶66    Dasen argues that the court erred by defining "child" in the context of the sexual abuse of children charge because the term was not defined in the code at the time. Whether or not V.H. and K.E. were children under the statute was, according to Dasen, a question for the jury.

¶67    The State responds that the 2005 amendment, which defined "child" as a person less than eighteen years of age, was a clarification rather than a substantive change in the law. The State notes that both the 2003 and 2005 versions of § 45-5-625(2)(b), MCA, provide a mandatory minimum prison sentence of four years for sexual abuse of children under sixteen years of age, which would be superfluous if the more general provisions of the statute were not construed to protect children between the ages of sixteen and eighteen years of age.

¶68    The interpretation of a statute is a question of law. *Heath*, ¶ 8. Questions of law are properly decided by the court, not the jury. Section 26-1-201, MCA. It was thus the District Court's role, not the jury's, to determine what "child" meant under the 2003 version of § 45-5-625, MCA. We agree with the court's interpretation that "child," taken in context with the rest of the statute, meant a person less than eighteen years old.

¶69    Dasen also argues that the court's comment, to the State, that the court did not "think that [Dasen's] idea of what age they were has anything to do with that offense," was a ruling that prevented Dasen from presenting his mistake of age defense. As the State points out, however, the court may have been confused about which count the State was referring to, because, as the court instructed the jury, Dasen was prohibited by law

17

from arguing mistake of age concerning Count II (aggravated promotion of prostitution).[3] Further, the court's comment was not an explicit prohibition. As Dasen did not ask the court to clarify its comment, and as Dasen had not even submitted a proposed jury instruction concerning the mistake of age defense for Count IV, Dasen is in no position to now argue that the court "ruled" against him with this remark.

¶70 Moreover, Dasen did in fact argue that he believed the girls were over eighteen. In his opening statement, Dasen contended that the underage victims had "devised schemes" to create the impression in Dasen's mind that "they were older than 18." During trial, Dasen elicited an admission from V.H. that she heard K.E. tell Dasen that K.E. was eighteen and that she heard L.M. tell Dasen that V.H. was eighteen or older. Dasen himself testified that all of the girls involved told him they were over eighteen and that he had "no clue" that K.E. or V.H. were underage. Then, in closing, Dasen argued that he did not "have the mental state to sexually abuse a child" and that he believed K.E. was "over eighteen." Assuming that Dasen felt unsure as to the extent he could argue mistake of age, his uncertainty can be attributed to his failure to seek clarification of the court's comment and his failure to submit a proposed jury instruction on that theory. Having done neither, he cannot now contend that the court precluded him from arguing mistake of age.

---

[3]Instruction 16 read: "[a] person commits the offense of Aggravated Promotion of Prostitution if the person purposely or knowingly promotes prostitution of a child under the age of 18 years, **whether or not the person is aware of the child's age"** (emphasis added).

¶71    The State rebutted Dasen's mistake of age claim, in closing, by arguing that K.E.'s youth was apparent based on the pictures in evidence as well K.E.'s testimony that she "had braces on her teeth" with "bright pink rubber bands on them." The State again referenced how obvious it was that K.E., especially, was underage, by asking the jury, in rebuttal closing, to "look at the age of" K.E. who looked as young as "14 or 13."

¶72    We conclude that the District Court did not prevent Dasen from presenting a mistake of age defense to Count IV.

## CONCLUSION

¶73    As to all four issues, we affirm the judgment of the District Court.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JIM RICE