DA 06-0359

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT  269

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LEWIS PRICE III,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                    In and For the County of Carbon, Cause No. DC-2005-20
                    Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       William Hooks, Chad Wright, Hooks & Wright, Helena, Montana

       For Appellee:

       Hon. Mike McGrath, Montana Attorney General, Jonathan M. Krauss,
       Assistant Attorney General, Helena, Montana

       Robert Eddleman, Carbon County Attorney, Red Lodge, Montana

                    Submitted on Briefs:  May 31, 2007

                           Decided:   October 22, 2007

Filed:

_____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Appellant Lewis Price III (Price) appeals from the judgment of the Twenty-Second Judicial District Court, Carbon County, convicting him of assault with a weapon, a felony, in violation of § 45-5-213(1)(b), MCA, and sentencing him therefor. We affirm.

¶2      We consider the following issues on appeal:

¶3      (1)      Did the State introduce evidence of other crimes and acts without notice and in violation of Price's due process rights?

¶4      (2)      Did the District Court abuse its discretion by permitting the testimony of Dr. James Quirk, Jr. as an expert on the potential for injury by a stun gun?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      On April 12, 2005, at approximately 4:30 a.m., Price entered the home of his girlfriend, Tabitha Olson (Olson), applied a "Black Cobra" stun gun to her temple, and shocked her as she slept on the couch. On April 15, 2005, the county attorney filed an information charging Price with assault with a weapon. A two-day bench trial followed.

¶6      At trial, Olson testified to the events of April 11 and 12, 2005. Olson testified that she and Price had an altercation on the evening of April 11 over the whereabouts of two of Olson's handguns. Price eventually left the house but returned in the early morning while Olson slept on the couch. Olson testified that the next thing she remembered after falling asleep was "[w]aking up to the stun gun" on her temple which made "a real loud, crackling noise . . . ." Olson testified that when she awoke, Price was standing over her and she exclaimed, "[y]ou just zapped me with a stun gun." After the attack she was

2

disoriented and soiled her garments. At the time of trial seven months later, the mark left on Olson's temple by the stun gun was still visible. During her testimony she referenced Price's use of alcohol and drugs. Price's counsel objected to the testimony regarding Price's drug use, and the court sustained the objection. Olson also stated that after the initial altercation she telephoned Undersheriff Thomas Rieger because she "was scared to call the police line" as Price "had threatened the Aryan Brotherhood . . . ." Price's counsel did not object to the "Aryan Brotherhood" reference but rather questioned Olson about the Aryan Brotherhood during cross-examination.

¶7 The State called Undersheriff Thomas Rieger (Rieger) as a witness. Rieger testified that he had known Olson for approximately ten years and that Olson had telephoned him prior to and after the assault. Rieger testified that after the initial altercation but prior to the assault, he went to Olson's house but Olson had then refused to make a statement. Rieger stated that during the first visit Olson told him that Price "previously had assaulted her . . . ." Price's counsel objected to the mention of a previous assault, and the court agreed, stating, "I'll strike any reference to previous criminal acts and will not consider the same." Rieger continued his testimony, informing the court that after the stun gun assault he and the sheriff went to Olson's home where she told them what happened and showed them "the injury she received on the side of her temple. She also showed [them] some injuries that she had from her previous domestic." Price's counsel did not lodge an objection with respect to the comment about a "previous domestic" and there were no further questions asked on the topic.

3

¶8     During Price's case-in-chief, Price took the witness stand and testified to his version of the story. During the cross-examination of Price, the State, among other things, asked Price about his feelings toward the Aryan Nation, whether he had a sniper handbook, his sexual relationship with one of his employees, and his 1982 conviction in the State of California for voluntary manslaughter. With the exception of the Aryan Nation question, Price's counsel interposed objections to the questions regarding these topics, and the court repeatedly sustained the objections. Specifically, as to the 1982 manslaughter conviction, the court determined that while Price had indicated during his direct examination that he was a felon and was on parole, it did not "open the door" to detailed questioning regarding the 1982 conviction. Rather, the court allowed the State to elicit from Price for which offense he was currently on parole. Price's counsel did not object to this decision and thanked the court for disallowing questioning regarding the 1982 conviction. As a result, Price testified that he was currently on parole for "intimidation." On re-direct, Price's counsel asked additional questions about the felony conviction for intimidation.

¶9     As part of its case, the State called Dr. James Quirk, Jr. (Dr. Quirk), Olson's treating physician, as an expert witness regarding Olson's physiological and psychological injuries suffered as a result of the stun gun attack. Dr. Quirk testified to Olson's injuries and the types of trauma that could be caused by a stun gun. Dr. Quirk indicated that there was a potential for the development of post traumatic stress disorder after such an attack. Price's counsel objected to Dr. Quirk's testimony, claiming that he was not an expert on stun guns. The court overruled his objection, ruling that Dr. Quirk

4

was qualified to "give an opinion related to trauma, that a person may experience from electrical shock . . . ." Following the trial, the District Court found Price guilty. The District Court subsequently found Price to be a persistent felony offender and sentenced him to a term of forty years in the Montana State Prison. Price appeals.

## STANDARD OF REVIEW

¶10 "This Court reviews a district court's evidentiary rulings for abuse of discretion." *State v. Ayers*, 2003 MT 114, ¶ 24, 315 Mont. 395, ¶ 24, 68 P.3d 768, ¶ 24. "[T]he test for abuse of discretion is whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Ayers*, ¶ 26.

## DISCUSSION

¶11 **(1)** **Did the State introduce evidence of other crimes and acts without notice and in violation of Price's due process rights?**

¶12 Price argues that the State introduced evidence of Price's other crimes and acts in violation of M. R. Evid. 404(b) by failing to give Price notice of "its intent to introduce other crimes and bad acts evidence . . . ." The State contends that Price waived his right to appeal this issue by failing to object to the complained of evidence and by actively participating in its introduction.

¶13 A district court's decision to admit evidence of other crimes, wrongs or acts as defined by M. R. Evid. 404(b), is guided by the Modified *Just* Rule which requires four elements be met before the evidence is allowed. These elements are:

> (1) The other crimes, wrongs or acts must be similar.
> (2) The other crimes, wrongs or acts must not be remote in time.
> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with

5

such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Ayers*, ¶ 73. In addition to satisfaction of the above stated elements the party offering the evidence must also follow certain procedural requirements. These requirements include in pertinent part providing "written notice to the defendant that such evidence is to be introduced. The notice . . . shall specify the evidence of other crimes, wrongs or acts to be admitted, and the specific . . . purpose or purposes for which it is to be admitted." *Ayers*, ¶ 77 (internal quotations omitted).

¶14 However, before reaching the merits of the application of the Modified *Just* Rule, the issue must be properly before the Court. This Court considers issues presented for the first time to be untimely and will not consider them on appeal. *State v. Ferguson,* 2005 MT 343, ¶ 38, 330 Mont. 103, ¶ 38, 126 P.3d 463, ¶ 38. This includes new arguments and changes in legal theory. *Ferguson*, ¶ 38. We refuse to fault a trial court " 'where that court has not been given the opportunity to rule on the admissibility of evidence and to correct itself.' " *State v. Vukasin*, 2003 MT 230, ¶ 29, 317 Mont. 204, ¶ 29, 75 P.3d 1284, ¶ 29 (quoting *State v. Stuit*, 277 Mont. 227, 230, 921 P.2d 866, 868 (1996)). The Court recognizes an exception to this rule only where an appellant invokes the "plain error doctrine." Under the plain error doctrine, it is within this Court's discretion to review claimed errors that, while not preserved for appeal, implicate a criminal defendant's fundamental constitutional rights. *State v. Dasen*, 2007 MT 87, ¶ 38, 337

6

Mont. 74, ¶ 38, 155 P.3d 1282, ¶ 38. However, "[w]e utilize plain error review sparingly, on a case-by-case basis." *Dasen*, ¶38. Absent implication of a defendant's fundamental constitutional rights, we will decline to review whether the district court properly admitted evidence under M. R. Evid. 404(b), if the district court did not have an opportunity to rule on the issue. *Ferguson*, ¶ 65.

¶15 Moreover, review of an alleged error is limited by statute. "This Court may review the verdict or decision and any alleged error <u>objected to</u> which involves the merits or necessarily affects the judgment." *State v. Scarborough*, 2000 MT 301, ¶ 73, 302 Mont. 350, ¶ 73, 14 P.3d 1202, ¶ 73 (relying on § 46-20-104(2), MCA). The purpose of stating an objection is two-fold. First, it allows the district court to correct itself if warranted and second, it preserves the issue for appeal. *Scarborough*, ¶ 74. Therefore, absent an objection, an alleged error is not appropriate for review. Furthermore, "where objectionable evidence or testimony is elicited by a party's own actions, that party waives the right to allege error on appeal because of the party's active participation in creating the error." *State v. Smith*, 2005 MT 18, ¶ 10, 325 Mont. 374, ¶ 10, 106 P.3d 553, ¶ 10.

¶16 Here, Price claims that the State violated the Modified *Just* Rule by allowing questioning and testimony regarding Price's other bad acts. Price claims it was error to allow any reference to Price's (1) alleged involvement in the Aryan Nation; (2) alleged sexual relationship with an employee; (3) use of drugs and alcohol; (4) alleged ownership of a Sniper handbook; (5) previous domestic abuse charges; (6) 1982 manslaughter conviction; and (7) prior felony conviction for intimidation. We discuss the alleged errors in turn.

7

¶17 As to the testimony regarding the Aryan Nation and Price's use of alcohol, Price's counsel failed to lodge any objection. Rather, Price's counsel actively participated in the line of questioning during both the cross-examination of Olson and during the direct examination of Price, respectively. As such, Price has waived his right to appeal introduction of this evidence.

¶18 Regarding the felony conviction for intimidation, Price's counsel failed to lodge an objection. While Price's counsel objected to introduction of the 1982 manslaughter conviction, Price did not object to the court's decision to allow questioning regarding Price's current parole for the intimidation conviction. Accordingly, Price has not preserved this issue for appeal. Moreover, on re-direct, Price's counsel asked several questions about the prior intimidation felony, thereby actively participating in the error Price now complains of. As such, Price's appeal is also waived for this reason.

¶19 As to the remaining allegations of error, Price's counsel objected, and the District Court sustained the objections. Consequently, Price cannot claim error where the District Court disallowed introduction of the allegedly improper evidence.

¶20 Finally, Price does not argue for review under the plain error doctrine by arguing that his fundamental constitutional rights were affected by the alleged improper evidence. At most, Price contends that the character evidence contributed to his conviction. Price also briefly argues that because improper evidence was introduced at trial, the judge sentenced him, in part, because of his "propensity for violence," despite the court's statement that it would "strike any reference to previous criminal acts and [would] not consider the same." Given our conclusion that proper objections were not made, the

8

evidence was thus properly admitted during the trial, and this argument is without merit.[1]

Therefore, we decline to review Price's claims further, and do not reach the merits of the

Modified *Just* Rule argument. Accordingly, we conclude there was no abuse of

discretion by the District Court.

**¶21 (2) Did the District Court abuse its discretion by permitting the testimony of Dr. James Quirk, Jr. as an expert on the potential for injury by a stun gun?**

¶22 Price argues that the District Court abused its discretion by allowing the testimony

of Dr. Quirk. Price contends that Dr. Quirk's expert opinion was not reliable and did not

meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

579, 113 S. Ct. 2786 (1993), and *Kuhmo Tire, Co. v. Carmichael*, 526 U.S. 137, 119

S. Ct. 1167 (1999).

¶23 Expert Testimony is governed by M. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

We have repeatedly held that "the test for admissibility of expert testimony is whether the

matter is sufficiently beyond common experience that the opinion of the expert will assist

the trier of fact to understand the evidence or to determine a fact in issue." *Ayers*, ¶ 36

(internal citations omitted). Only where the introduction of "novel scientific evidence" is

sought do we apply the *Daubert* standard. *State v. Cline*, 275 Mont. 46, 55, 909 P.2d

---

[1]Price raises no separate issue regarding the propriety of the information considered by the District Court during sentencing.

9

1171, 1177 (1996). Where *Daubert* applies, a district court must look to several non-exclusive factors for considering if scientific evidence may be admitted, including:

> (a) whether the theory or technique can be and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation; and (d) whether the theory or technique has been generally accepted or rejected in the particular scientific field.

*Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 52, 289 Mont. 1, ¶ 52, 961 P.2d 75, ¶ 52 (citing *Daubert*, 509 U.S. at 592-95, 113 S. Ct. at 2796-98). However, where *Daubert* is inapplicable "it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation." *Barmeyer v. Montana Power Co.*, 202 Mont. 185, 193-94, 657 P.2d 594, 598 (1983) (internal quotations omitted), *overruled on other grounds*, *Martel v. Montana Power Co.*, 231 Mont. 96, 103, 752 P.2d 140, 145 (1988).

¶24 Here, Price argues that the District Court erred by not applying and excluding Dr. Quirk's testimony under the *Daubert* standard. We disagree. Medical diagnosis is not "novel scientific evidence" and therefore the *Daubert* standard does not apply. Consequently, we review the record to determine if the court abused its discretion in allowing Dr. Quirk's testimony.

¶25 At trial, the State established a foundation that Dr. Quirk is a medical physician who is trained in how to "treat electrical shock and electrical burns[,]" has conducted "private research concerning injuries resulting from exposure to electric shock via a stun gun[,]" and specializes in "[f]amily practice and emergency medicine." Price's counsel

10

did not object "to the foundation for the medical diagnosis" and objected only to Dr. Quirk as an expert "in regards to a stun gun . . . ." In response to this objection the District Court found that Dr. Quirk was qualified to give an "opinion related to trauma, that a person may experience from electrical shock . . . ." On cross-examination, Price's counsel elicited that Dr. Quirk used medical literature provided by the prosecution and did not know the difference in power between a stun gun and a taser.

¶26　Looking to the record, it was not "beyond the bounds of reason" for the District Court to allow Dr. Quirk to testify about the potential for serious bodily harm from a stun gun. *Ayers*, ¶ 26. Given the foundation of Dr. Quirk's medical knowledge, the court reasonably found that Dr. Quirk was qualified to give a medical opinion that would "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." M. R. Evid. 702. We adhere to the settled principle of admitting relevant scientific evidence in the same manner as other expert testimony and allowing its weight to be attacked by cross-examination and refutation. *Barmeyer*, 202 Mont. at 194, 657 P.2d at 598. Here, cross-examination allowed Price ample opportunity to address his concerns regarding Dr. Quirk's knowledge of stun guns and the trauma they may induce. Consequently, we find that the District Court did not abuse its discretion by allowing the testimony of Dr. Quirk.

¶27　Affirmed.

/S/ JIM RICE

11

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS